**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ELAN PAVLOV,**<br>**Plaintiff,**<br><br>**v.**<br><br>**WILMINGTON SAVINGS FUND SOCIETY, FSB**<br>**DUNBAR LLC**<br>**DUNBAR GROUP LLC**<br>**Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO. 25CV7362** |

**MEMORANDUM OPINION**

Plaintiff Elan Pavlov, the beneficiary of a payable-on-death ("POD") account established by his late grandmother, has sued Wilmington Savings Fund Society ("WSFS"), along with third-party vendors Dunbar LLC ("Dunbar") and Dunbar Group LLC,[1] because he says they failed to notify him about and provide access to that account when his grandmother died. He brings claims against WSFS, on behalf of himself and a putative class of individuals, under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*; the Delaware Consumer Fraud Protection Act ("DCFPA"), Del. Code Ann. tit. 6, § 2511, *et seq.*; as well as for negligence, conversion, unjust enrichment, and breach of confidence. His claims against Dunbar, again on behalf of himself and a putative class of individuals, are for violations of the DCFPA, Del. Code Ann. tit. 6, § 2511, *et seq.*, and aiding and abetting breach of confidence.

[1] Dunbar states in its brief that it is improperly named as Dunbar Group LLC but provides no additional information nor legal authority regarding whether Dunbar Group LLC should be dismissed from this litigation. To the extent that this statement is intended to support a motion to dismiss Dunbar Group LLC, it shall be denied. Rule 7.1 of the Local Rules of Civil Procedure of the Eastern District of Pennsylvania requires that "[e]very motion . . . shall be accompanied by a brief containing a concise statement of the legal contentions *and authorities* relied upon in support of the motion." E.D. Pa. R. Civ. P. 7.1(c) (emphasis added). Dunbar Group LLC will, accordingly, remain as a party in this action. The parties should inform the Court as to how they wish to proceed with respect to this remaining defendant.

The Court dismissed Plaintiff's Original Complaint for lack of jurisdiction on a motion brought by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Pavlov v. Wilmington Savings Fund Soc'y, FSB*, 2026 WL 1365010, at *2 (E.D. Pa. May 15, 2026). Pavlov sought to address these jurisdictional issues in an Amended Complaint by adding: (1) specificity to the claimed amount in controversy; (2) a new claim under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693(g), which prohibits holding consumers liable for unauthorized electronic fund transfers over $50; and, (3) another putative class, which he labels the "Transaction Class," designated as all owners of WSFS asset accounts who were held liable for a transaction from their account after WSFS was on notice that the transaction was unauthorized, to capture the additional claim. Defendants argue that these additional allegations do not cure the jurisdictional defect and, thus, move again to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons that follow, Defendants' Motions to Dismiss shall be granted.[2]

## I. FACTUAL BACKGROUND

The following facts are taken from Pavlov's Amended Complaint.[3] Pavlov is the beneficiary of a POD account established by his late grandmother, of which WSFS never provided notification nor periodic statements after her death in 2019 up until he became aware of the account in 2025. Instead, WSFS contracted with Dunbar to locate named beneficiaries to

[2] In that this Court has no jurisdiction over Plaintiff's Complaint, it does not reach Defendants' other proposed grounds for dismissal. *See Stevens v. Sley*, 407 F. Supp. 140, 141 n.1 (E.D. Pa. 1976) ("Because [the Court] ha[s] determined that [it] must dismiss this action for lack of subject matter jurisdiction, [the Court] do[es] not reach the defendants' other grounds advanced in support of their motion to dismiss.").

[3] The Amended Complaint is the proper source to assess jurisdiction, as "[t]he reconfiguration [of a complaint] accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35-36 (2025). Of additional note, because the basic facts have not changed since this Court's prior opinion, general familiarity with the facts pertaining to the underlying dispute is assumed. *See Pavlov*, 2026 WL 1365010, at *1.

reunite them with "dormant" accounts before the account could escheat to the state. Dunbar, in turn, contacted Pavlov, requesting a fee in exchange for information about his account.

## II. DISCUSSION

The Amended Complaint suffers from the same infirmities previously identified. Previously, this Court dismissed the EFTA claim without prejudice because Pavlov failed to plausibly allege that he was the owner of the POD account, such that WSFS would be subject to the EFTA's statutory obligations. *See Pavlov*, 2026 WL 1365010, at *2. Because the EFTA claim alone supported federal question jurisdiction pursuant to 28 U.S.C. § 1331, and because the amount in controversy pleaded under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), was insufficient, subject matter jurisdiction was found to be lacking. *See id.*

Here again, the Amended Complaint fails to establish federal question jurisdiction under Plaintiff's EFTA claims, and it fails to establish, in the alternative, jurisdiction under CAFA with respect to WSFS. Although the Amended Complaint sufficiently pleads facts establishing jurisdiction with respect to Dunbar under CAFA, Plaintiff has failed to establish that he has standing to pursue his claims against Dunbar. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n. 13 (1984) (jurisdictional questions must be resolved for each defendant and claim).

### A. Legal Standard

"When a motion to dismiss is based on the lack of subject matter jurisdiction in addition to other defenses, '[a]n actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case.'" *Garcia v. Wind Creek Bethlehem, LLC*, 2022 WL 4130754 (E.D. Pa. Sept. 12, 2022) (alteration in original) (quoting *Tagayun v. Stolzenberg*, 239 F. App'x 708, 710 (3d Cir. 2007)). "It is axiomatic that federal courts are courts of limited jurisdiction, and as such are under a continuing duty to satisfy themselves of

their jurisdiction before proceeding to the merits of any case." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993) (citations omitted). Indeed, the Federal Rules of Civil Procedure require the Court to dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").

Similarly, standing is a "fundamental jurisdictional question" that "must be addressed before reaching the merits." *AT&T Comm'ns of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162, 168 (3d Cir. 2001). At the pleading stage, a litigant invoking the power of the federal court must plausibly allege: (i) an injury-in-fact; (ii) that is fairly traceable to the conduct of the party sued; and, (iii) that is judicially redressable. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). When a plaintiff's standing is challenged on the sufficiency of the pleadings, this facial attack is evaluated with "the same standard of review" as a motion to dismiss for failure to state a claim, with "well-pleaded factual allegations" presumed to be true and "conclusory statements" ignored in evaluating whether the allegations "plausibly" establish standing. *Finkelman v. Nat'l Football League* ("*Finkelman I*"), 810 F.3d 187, 194 (3d Cir. 2016).

**B. Jurisdiction Against WSFS**

***i. Federal Question Jurisdiction Under the EFTA Claim***

Although Pavlov added an additional claim pursuant to the EFTA's statutory command to limit an account owner's liability for an unauthorized fund transfer under 15 U.S.C. § 1693g, this fails to remedy the heart of the issue—that Pavlov has again failed to allege facts that would establish that WSFS is subject to the EFTA in the first instance. As this Court previously

described, "[t]he dispute . . . is whether the account at issue here . . . was an 'account of' Pavlov within the meaning of the EFTA." *Pavlov*, 2026 WL 1365010, at *2. That question is also at the heart of Section 1693g, which provides for liability in the case of an "unauthorized electronic fund transfer involving the *account of* such consumer." 15 U.S.C. § 1693g(a) (emphasis added). The plain meaning of the word "of" denotes ownership. *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011) (citing cases and dictionaries showing that "of" indicates an association between two entities, typically one of "belonging").

"[W]hether the account passed to [Pavlov] upon his grandmother's death is a legal conclusion, not a fact, and is therefore not to be taken as true at the motion to dismiss stage." *Pavlov*, 2026 WL 1365010, at *2 (citing *Brown v. Comm'r of Internal Revenue*, 131 F.2d 640, 641 (3d Cir. 1942)); *see also James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) ("At the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." (citations omitted)). "Ownership, while based on facts . . . is a legal concept." *Brown*, 131 F.2d at 641. Although Pavlov requests this Court to accept as fact his allegation that he became the owner of the POD account upon his grandmother's death, his allegation is a legal conclusion not entitled to a presumption of truth.

Pavlov attempts to circumvent this hurdle by his inclusion of reference to Pennsylvania's Multiple-Party Accounts Act ("MPAA"), 20 Pa. Cons. Stat. §§ 6301-6306, to buttress his theory that he became the legal owner of the POD account upon his grandmother's passing. The MPAA provides that, upon the death of the depositor of a POD account, any remaining sums

belong to the named beneficiaries.[4] 20 Pa. Cons. Stat. § 6304(b). Because the remaining sums then belong to the beneficiary, Pavlov reasons, the account must belong to the named beneficiary as well. In other words, Pavlov's argument assumes that his entitlement to funds in the account, by itself, establishes a proprietary ownership interest. This assumes too much.

The plain language of Section 6304 is limited to governing the right of survivorship to sums remaining in the account, rather than the account itself. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) ("The starting point for interpretation of a statute is the language of the statute itself." (citations and quotations omitted)); 20 Pa. Cons. Stat. § 6304(b) ("At the death of the trustee . . . *any sum remaining* on deposit belongs to the person . . . named as beneficiar[y] . . . ." (emphasis added)). It follows, then, that the MPAA solely establishes Pavlov's entitlement to sums remaining on deposit upon the depositor's death, not any successive ownership right to the depositor's account or the obligations associated with the account itself.

Other sections of the MPAA reinforce this interpretation. *See Leckey v. Stefano*, 501 F.3d 212, 220 (3d Cir. 2007) (emphasizing that it is a "cardinal rule that a statute is to be read as a whole"). While other sections discuss ownership of accounts during the lifetime of the parties, Section 6304 crucially omits any such mention. *See Hanover Bank of Pa. v. United Penn Bank*, 474 A.2d 1137, 1140 (Pa. 1984) (contrasting Section 6303's application to ownership of accounts to Section 6304's application to rights of survivorship and the "sum remaining on

[4] Pavlov additionally cites statutes from Delaware and New Jersey that similarly govern ownership of the leftover sums of POD accounts upon the death of the depositor. *See* Del. Code Ann. tit. 5, §§ 924(a)(3), 924(b)(4) (title to *funds* in a trust vests in the beneficiary upon the death of the depositor); N.J. Stat. Ann. § 17:16I-5 (any *sums* remaining on deposit belong to the POD payee on death of the sole original payee). Although these statutes are presumably cited because WSFS also operates in these states, this is of little relevance here. Pavlov himself indicates that Pennsylvania law applies and that "ownership of the WSFS account passed to Plaintiff automatically by operation of *Pennsylvania* law." Amended Complaint ¶ 48 (emphasis added).

deposit"). Furthermore, the MPAA classifies a beneficiary of a trust account as a "party" for the purposes of the statute "only after the account becomes payable to him by reason of his surviving the original trustee," and a party, in turn, is a "person who . . . has a present right, *subject to request, to payment* from a multi-party account." 20 Pa. Cons. Stat. § 6301. In other words, Pavlov's right to the POD account is solely a right to payment. The statute, viewed in its entirety, repeatedly focuses on sums, balances, and funds as it relates to surviving beneficiaries. *See In re Estate of Meyers*, 642 A.2d 525, 528-30 (Pa. Super. 1994) (discussing survivor's ownership interest in account *funds*); *In re Estate of Novosielski*, 992 A.2d 89, 105-06 (Pa. 2010) (same). All that Pavlov is entitled to is a "mere expectation of a right of survivorship" and "transfer of title to those funds" remaining in the account, rather than any "transfer of title to property." *Deutsch, Larrimore & Farnish, P.C. v. Johnson*, 848 A.2d 137, 143-44 (Pa. 2004).

Accordingly, this Court does not have jurisdiction over Pavlov's EFTA claims. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 n.6 (1987) ("Federal district courts have original jurisdiction over "'all civil actions arising under the Constitution, laws, or treaties of the United States.'" (quoting 28 U.S.C. § 1331)).

***ii. Jurisdiction Under CAFA***

As he did in his Original Complaint, Pavlov argues that jurisdiction is proper under the Class Action Fairness Act, because: (1) minimal diversity exists; (2) the proposed class exceeds 100 members; and, (3) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(2).[5] Pavlov's Original Complaint did not provide sufficient factual detail to support his allegation that the amount in controversy would exceed $5,000,000. *See Pavlov*, 2026 WL 1365010, at *3. Now, in his Amended Complaint, Pavlov attempts to reach that amount by a

[5] Parties do not dispute that minimal diversity exists and that the proposed class would exceed 100 members.

series of calculations: He alleges that WSFS allowed a debit of $1,160.03 on his grandmother's account in violation of the EFTA; that WSFS escheated more than 208 beneficiary accounts with funds worth $618,307.32 to Pennsylvania; that Plaintiff estimates he was damaged in an amount exceeding $3,000, accounting for the "loss of use of funds, unauthorized transactions, improperly assessed fees, and pre-judgment interest"; that, in Plaintiff's estimate, "[i]f three beneficiaries at each WSFS branch," of which there are 114, "were similarly injured every year over a five-year period, total damages would exceed $5,000,000"; and that Dunbar has attempted to extract at least $5.6 million from account beneficiaries.

WSFS aptly points out that Pavlov again only offers speculation to substantiate his pleaded amount in controversy, this time adding numbers—$3,000 in personal damages and $618.307.32 in funds escheated from WSFS to the state—that fall well below the $5,000,000 benchmark. Even taking as true that Pavlov was damaged at an amount exceeding $3,000, the Amended Complaint offers only an unsubstantiated hypothetical formula to meet the $5,000,000 benchmark. The Amended Complaint contends that "[i]f three beneficiaries at each [of the 114] WSFS branch[es] were similarly injured every year over a five-year period, total damages would exceed $5,000,000." These allegations are entirely hypothetical. More than simple speculation is required to assert the amount in controversy. *See, e.g.*, *Hoffman v. Teleflora LLC*, 2016 WL 423648, at *3 (D.N.J. Jan. 19, 2016) (finding that the CAFA amount in controversy is likely not met because there were no facts "substantiating its amount" and, instead, only a "structured calculation that is entirely speculative" of an "unsupported valuation of $300 for each individual claim" with an unsubstantiated class size); *Smith v. Haverfield Int'l Inc.*, 2023 WL 6164368, at *3 (D.N.J. Jan. 18, 2023) (indicating that it is "mere speculation" to multiply plaintiff's damages by the number of members in a class to reach an estimated damages amount because it assumes

that all members of the class experienced the same amount of loss); *Ciccone v. Progressive Specialty Ins. Co.*, 2020 WL 7319777, at *6 (M.D. Pa. Dec. 11, 2020) (finding that because other class members may have damages that "vary dramatically," there was no way for the court to estimate the total amount in controversy "beyond pure speculation"); *see also Pavlov*, 2026 WL 1365010, at *3 (citing cases).

Pavlov also references $618,307.32, an amount which he maintains represents the sum of 208 beneficiary accounts that WSFS escheated to the state of Pennsylvania between 2017 and 2024. This number, as well, is entirely speculative and falls well below the CAFA benchmark. Pavlov plucks this seven-year time frame out of thin air, as it is unclear why he starts the clock at 2017 and ends it at 2024, given that he alleges he became the owner of the POD account in 2019. The asserted amount rests on an unexplained temporal assumption. Pavlov does not allege that the challenged conduct began in 2017, continued throughout that period, or injured the proposed class continuously during that time. A CAFA calculation cannot rest on a damages input that represents a theoretical maximum, based on an unsupported time frame, rather than an evidence-based measure of the claims at issue. *See Judon v. Travelers Property Casualty Co. of Am.*, 773 F.3d 495, 508 (3d Cir. 2014).

Furthermore, Pavlov contends this number is representative of WSFS's systemic failures in its processes for maintaining beneficiary records, contacting account owners, and performing escheat reporting. This, too, casts too wide a net. WSFS is obligated to remit funds to the state pursuant to its statutory duties. *See* 72 Pa. Cons. Stat. §§ 1301.2, 1301.3 (obligating financial institutions to escheat to the state all abandoned and unclaimed property). Pavlov equates the amount that WSFS escheated to the state to the amount that WSFS allegedly failed to maintain records and contact account owners for—a completely theoretical premise which the Amended

Complaint fails to support with plausible facts. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012) ("Even on a motion to dismiss, we are not required to credit mere speculation."); *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 543 (3d Cir. 1995) (indicating that, in general, "speculative arguments" based on "conjecture" should not be considered in determining the amount in controversy). With both the theoretical time frame and unsupported assumptions underlying the escheatment figure, Pavlov puts forth a "blind" estimate of damages based on his calculation of "maximum" potential damages, assuming that *all* funds that WSFS escheated to the state in those seven years were injurious to the putative class. *Judon*, 773 F.3d at 508.

"[A]n assumption must be grounded on some reasonable inference that can be drawn from fact," not just some "optimistic estimate" of potential liability. *Id.* at 507-08. This Court again "cannot determine, based on the facts alleged, how the amount in controversy here could plausibly exceed $5,000,000" with legal certainty. *Pavlov*, 2026 WL 1365010, at *3. "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed . . . the suit will be dismissed." *St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 289 (1938). With Pavlov's failure to adequately allege an amount in controversy, jurisdiction pursuant to CAFA, 28 U.S.C. § 1332(d), is not proper.

**C. Jurisdiction Against Dunbar**

***i. Jurisdiction Under CAFA***

Pavlov brings two state-law claims—violations of the Delaware Consumer Fraud Protection Act and aiding and abetting breach of confidence—against Dunbar, calculating estimated damages at $5.6 million, above CAFA's benchmark of $5,000,000. To reach this number, Pavlov combines the entirety of all Dunbar accounts with all financial institutions, not

just WSFS, and extrapolates that all referred accounts result in the payment of the same 20% recovery fee that Pavlov was subject to.

Dunbar argues that because Pavlov improperly aggregates alleged damages from Dunbar's work for other financial institutions and because any potential number of outcomes is possible for a referred account, Pavlov's estimate is excessive. But Pavlov has properly defined a putative class arising from Dunbar's similar dealings, alleging facts establishing Dunbar's standard recovery fee amount of 20% and citing to marketing materials that establish a similar course of conduct across clients and beneficiaries. *Cf. Kinlock v. HealthPlus Surgery Ctr., LLC*, 2019 WL 2511491 (D.N.J. 2019) ("A plaintiff is the master of his complaint and may construct a proposed class however he so chooses, including to intentionally to [sic] avoid jurisdiction under CAFA." (citations omitted)). The Amended Complaint plausibly pleads a common nationwide practice that supports the definition of the putative class and the amount in controversy pleaded. At this stage, this Court must take these factual allegations as true. Dunbar fails to establish that Pavlov could never recover the amount claimed with legal certainty.

***ii. Standing***

However, Plaintiff's Complaint against Dunbar must be dismissed for lack of standing, in that Pavlov has not "allege[d] facts that affirmatively and plausibly suggest that [he] has standing to sue" for the two claims against Dunbar. *Finkelman I*, 810 F.3d at 194 (citations and quotations omitted); *see also Sosna v. Iowa*, 419 U.S. 393, 402-03 (1974) (requiring standing in a class action lawsuit to be assessed as if it had been filed as an individual action). Specifically, Pavlov does not adequately allege an injury in fact that is concrete and particularized. An injury in fact is an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," closely tracking a "harm traditionally

recognized as providing a basis for a lawsuit in American courts." *Associated Builders & Contractors W. Pa. v. Cmty. College of Allegheny Cnty.*, 81 F.4th 279, 287-88 (3d Cir. 2023) (citations and quotations omitted).

The injuries which Pavlov alleges arise from both its claims against Dunbar arise from its delayed transfer of ownership, deprivation of access to funds, loss of privacy, lost investment opportunities, loss of control over personal information, and exposure to unwanted and coercive solicitations from Dunbar. These harms can be broadly grouped into two categories: loss of economic opportunity and loss of privacy. While both track cognizable injuries, the facts alleged do not adequately support the concreteness and particularity of the claimed injuries.

First, Pavlov asserts that he experienced economic loss, without alleging facts about how long Dunbar allegedly delayed the escheatment process, what resulted from that delay, and what kinds of economic opportunities were lost. *See Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 580-81 (3d Cir. 2024) (requiring more than "allegations that stand on nothing more than supposition" to establish an economic injury, including specific allegations related to whether and in what amount plaintiffs suffered a loss a result of defendant's inaction). Instead, Pavlov's injury is circular. His injury presupposes that he lost out on the use of an account of which he was not the legal owner of at the time. The Amended Complaint must do more than rest on "presumption[s] essential to the[] allegations of financial harm." *Id.* at 581 (alteration in original) (quotations and citations omitted); *compare Finkelman I*, 810 F.3d 187, *with Finkelman v. Nat'l Football League*, 877 F.3d 504 (3d Cir. 2017) (concluding that plaintiff remedied standing in an amended complaint by alleging "economic facts that are specific, plausible, and susceptible to proof at trial"). Indeed, Pavlov himself acknowledges that he was unaware that the POD account existed, that he has not been permanently deprived of his property, and that his

funds remain available and recoverable pursuant to the Pennsylvania escheat process. *Cf. Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540-41 (finding no monetary injury for plaintiffs that could continue to receive the same monetary benefits they were already slated to receive).

Second, Pavlov points to Dunbar's maintenance of his information to do outreach and solicitation as an invasion of privacy, but this too fails to satisfy what ordinarily constitutes an injury of this kind. It is well established that the loss of privacy is an injury in fact when it subjects the plaintiff to humiliation or public disclosure. *See Cook v. GameStop, Inc.*, 148 F.4th 153, 159-60 (3d Cir. 2025) (finding persuasive that alleged privacy harm was not an injury in fact on the basis that the information was not of the type that could cause plaintiff humiliation, that the information was never publicized or ever publicly disclosed, and that plaintiff was solely concerned with disclosure of information to a third-party vendor, not the broader public); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021) (indicating that the maintenance of private information, without more, does not itself constitute a concrete harm); *cf. In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 264 (3d Cir. 2016) (emphasizing that "unauthorized disclosures of information" have long been seen as injurious). Here, the transfer of Pavlov's information between WSFS and Dunbar is more akin to the "communication of personal information . . . [that] occurs between a debt collector and an intermediary tasked with contacting the consumer," which is "not . . . the kind of privacy harm" traditionally recognized. *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 146 (3d Cir. 2024).

Since Pavlov has not established a concrete and particularized injury against Dunbar, his claims shall be dismissed for lack of standing.

* * *

As Pavlov has failed to allege any new allegations in the Amended Complaint that would

establish subject matter jurisdiction or standing respectively, the claims against WSFS and Dunbar shall be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[6]

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**

[6] Because the federal claims in this case have been disposed, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, which shall be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").